**ROBERT W. STREETT, INC., d/b/a
Postal Instant Press,
Plaintiff–Respondent,**

v.

**Thomas ELLIOTT,
Defendant–Appellant.**

No. 53582.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 5, 1988.

Mary Ann Weems, Clayton, for defendant-appellant.

Robert J. Brummond, St. Louis, for plaintiff-respondent.

KELLY, Judge.

Robert W. Street, Inc., d/b/a Postal Instant Press ("PIP") sued Thomas Elliott for breach of an employment contract seeking monetary damages and injunctive relief. The trial court sustained PIP's motion for judgment based on a settlement agreement previously reached in open court by the parties. The court subsequently denied Elliott's motion to set aside the judgment due to lack of jurisdiction. Elliott has appealed the order denying his motion to set aside. We reverse and remand the judgment of the trial court.

On February 11, 1987, PIP filed its lawsuit against Elliott, its former employee, for his alleged breach of an employment contract and covenant not to compete. PIP sought monetary damages and an immediate temporary restraining order to enjoin Elliott from further breaching the restrictive covenants contained in his employment contract with PIP.

On February 13, 1987, the parties appeared by counsel before the trial court. The court initially denied PIP's application for a temporary restraining order but ordered a show cause hearing for Elliott to "show cause why the temporary restraining order should not issue." The show cause hearing and preliminary injunction hearing were consolidated by the court to be heard on March 4, 1987.

On March 4, the case was settled by memorandum indicating that the "parties appear along with their attorneys" and that the "[c]ause is settled upon following outlined terms. Settlement order to follow." Five terms were agreed upon: (1) Elliott was not to solicit PIP customers or (2) its employees on behalf of his present employer until September 4, 1989; (3) Elliott was to pay $5000.00 to PIP at the rate of $200.00 per month, beginning April 1, 1987, plus interest amounting to 12% per annum with no prepayment penalty; (4) in the event of default, (a) a judgment would be entered in favor of PIP for the principle and interest as of the date of default plus an additional $5000.00 and (b) Elliott would be enjoined from working for any PIP competitor for six months. The fifth and final term required Elliott keep the agreement terms confidential. The memorandum was prepared by Elliott's attorney, signed by the attorneys for both parties and entered by the court.

Thereafter, on March 9, 1987, counsel for PIP sent the settlement order to Elliott's attorney to execute. However, Elliott instructed his attorney to immediately withdraw from the case, contending that the settlement order as drafted did not conform to the agreement of the parties. Elliott never executed the settlement order and took no further action.

On April 6, 1987, PIP filed a "Request for Entry of Decree and Judgment" based on the settlement memorandum of March 4. The request averred that Elliott had failed to make the $200.00 payment required by the settlement agreement and that he was in default under the agreement. PIP's request for entry of decree and judgment did not contain counsel's certificate of service or any other proof of service. The next day, on April 7, 1987, the court entered a judgment in favor of PIP for $10,782.44.

In its decree and judgment, the court ordered the sheriff to serve a copy of the decree upon Elliott at his residence. The minutes of the judge's docket sheets reflect the sheriff filed his return "non est" on June 6, 1987. The record does not disclose how Elliott learned of the entry of the judgment of April 7, 1987. However, having retained new counsel, Elliott filed a motion on April 27, 1987, to set aside the judgment of April 7, 1987. His motion was accompanied by his affidavit stating that he did not agree to the proposed settlement order, he did not authorize his attorney to sign the proposed settlement order and he was not served with a copy of PIP's request for entry of decree and judgment. The motion was to be argued before the court on May 7, 1987, but at the request of Elliott and over the objection of PIP, the hearing was continued. The motion was eventually argued on July 28, 1987, after which the court entered an order that it was without jurisdiction to set aside its order of March 4, 1987.

■ Elliott first contends that the trial court erred in holding that it was without jurisdiction to set aside its order of March 4. Elliott argues the order of March 4 was simply a memorandum indicating that the cause was being passed for settlement and was not a final judgment, so the trial court retained jurisdiction for further proceedings. We agree that the March 4 memorandum was not a final judgment. The trial court, however, did render a final, appealable judgment when it entered its decree and judgment on April 7. Our in-

quiry shifts from the order of March 4 to the propriety of the judgment of April 7.

In the judgment of April 7, the trial court attempted to reduce the March 4 memorandum to a final, appealable judgment. The issue dispositive of this appeal is Elliott's contention that the trial court erred in entering the judgment on April 7 based on PIP's request for entry of judgment because Elliott did not receive notification of the motion filed April 6, 1987, or of the subsequent judgment and no hearing was held on said motion.

■ The failure of PIP's counsel to include proof of service of its request for entry of the decree, although violative of Rule 43.01, had no effect on the trial court's authority to enter its decree on April 7. The trial court could enter its judgment *sua sponte* that reflected the terms of the settlement agreement. We do not believe that the trial court had any obligation to have an evidentiary hearing before entering its judgment April 7 that mirrored the settlement agreement of March 4.

In a case procedurally identical to this, we stated that "an open court agreement to settle a pending lawsuit, accompanied by a stipulation that the cause be passed for settlement, terminates the cause of action and creates a new obligation *warranting a judgment in accordance with the terms of settlement." Wenneker v. Frager*, 448 S.W.2d 932, 935 (Mo.App.1969). (emphasis ours). We acknowledged that a "valid compromise and settlement assented to by all the parties in interest is ordinarily final, conclusive and binding upon them as any contract and is as binding as if its terms were embodied in a judgment." *Id.* [2]. The intended effect of the trial court in entering its decree of April 7 was to embody in a judgment the March settlement agreement previously reached in open court.

■ The difficulty with the decree entered here is that it went beyond the settlement agreement. The settlement agreement provided:

"4. *In event of default* of payment:

a. Defendant enjoined from working for PIP competitor for 6 months.

b. Judgment entered for principal + interest as of date of default, plus an additional $5,000.00" (emphasis ours)

Rather than merely incorporating that fourth term of the settlement agreement as it did the other terms, the trial court's April decree, as entered, stated the following: *"upon default* of Defendant Thomas Elliott ...

1. Defendant Thomas Elliott is enjoined from working for any PIP competitor for a period of six (6) months, ... and

4. [j]udgment is entered against Defendant Thomas Elliott ... in the sum of Ten Thousand Seven Hundred Eighty-Two and Forty-Four Hundreths Dollars ($10,782.44), plus costs.

(emphasis ours).

The trial court, instead of specifying only the effect resulting "in the event of default" by Elliott, determined that Elliott was, in fact, in default.

While it is true that Elliott had agreed that a judgment would be entered upon his default, he was entitled to a hearing on the issue whether his default had actually occurred. Other than PIP's bare allegation in its request for entry of judgment that Elliott was in default, the record is bereft of any factual support for the trial court's initial inclusion in its decree of April 7 of that determination.

In *Terre du Lac, Inc., v. Black*, 713 S.W.2d 18 (Mo.App.1986), this court held that, although the trial court retains control for thirty days after entry of judgment and may amend it under Rule 75.01, reasonable notice and an opportunity to be heard must be given to the party or parties affected by the court's intended action. 713 S.W.2d at 21[2]. "Reasonable notice" is that which is suitable to the case or such notice or information of a fact as may fairly and properly be expected or required in the particular circumstances. *Id.* The purpose of such notice is that the party to be affected adversely may appear for his own protection and to afford opportunity for a litigant to present his views as to matters instantly before the court which

may affect his rights. *Id.* The trial court in *Terre du Lac* failed to give notice to the party adversely affected before setting aside a previously entered consent judgment.

Under the aegis of *Terre du Lac,* we believe Rules 43.01 and 75.01 required Elliott be given reasonable notice and an opportunity to be heard before the trial court declared that he was in default. While the trial court had authority to enter a judgment on April 7 pursuant to the settlement agreement of March 3, we conclude the trial court erred in entering a decree that went *beyond* the agreed settlement terms without first having afforded Elliott a hearing. That portion of the judgment adjudicating Elliott's default must be reversed.

If PIP desires to have Elliott declared in default of the settlement agreement, PIP should serve a motion to enforce the settlement agreement on Elliott pursuant to Rule 43.01. After a hearing, if Elliott is determined to have defaulted upon payment or violated the settlement so decreed, PIP is entitled to a judgment implementing the default provisions of the settlement agreement.

Reversed and remanded to the trial court for further proceedings consistent with this opinion.

KAROHL, P.J., and SMITH, J., concur.